on the argument calendar, the first of which is Lynn v. Radish Media. All right, Mr. Olson, you have reserved two minutes for a rebuttal, so that gives you eight to begin, and as soon as you're ready, you can proceed. Thank you, Your Honor. Good morning, Your Honor. May it please the Court? My name is John Olson, and I represent the appellant here, Joon Young Lim, Jordan Lim. I'd just like to spend my time this morning going over a few key facts. The first is that Mr. Lim is trying to collect money that he was promised, not money, an equity interest in the company that he was promised several times during his course, that he was there for 16 months. He was promised equity probably six times, seven times, and he was promised equity even after he left. But you're bringing a promissory stop-hold claim, right? That's the only one that's left? Yeah, that is the only one. Not a contract claim? That is right, Your Honor. And so I guess the question is, I mean, I think the District Court went off on whether or not it was a conditional promise because there wasn't yet a plan, there wasn't yet a board that approved the distribution. There were a lot of things that hadn't yet happened, and those things didn't seem to happen until after your client had left the company. I disagree. That's what the District Court said, but we disagree with that finding. And if you look at the allegations of the Second Amendment complaint and the attachment there, from this law firm offering, it's predated. So the letter's written in June of 2016, but it's written as if it was written in March of 2015. It was written as if it was before he started. Right, but when did your client leave? He left in June of 2016. I think maybe his last day was June 22, 2016. And I'll get right to that letter because I brought it up. That letter, it's A39 in the appendix. And there's a footnote there. And this letter is, like I said, it's written as of March 2015, but it was given to Mr. Lim as he was leaving. And that footnote number one says, the number of options granted to you shall represent 1.5% of the founder's shares, i.e. shares held by Sung Young Lee and Daniel Tudor, and employee option pool on or around June 27, 2016. So that and the email that's also referenced in the complaint indicate that this has been done. This is ready to go. Mr. Lee, Defendant Lee, told my client on numerous occasions that, yes, you're going to have it. This is, and back up. On that same day when Mr. Lee sends the email to Mr. Lim that has this letter, he says very plainly, let me find it here. On that day, so Lee is confident that any conditions of the equity offer had been satisfied. He had the numbers. This is June of 2016. Okay. He says to Mr. Lim, okay, we have the founder's shares. That's 32,000. We know that 10% employee option pool will equal 3,774. That means if you stayed the whole time, if you stayed, if your whole interest vested, you would have 540. No, I get all that. I think the question, at least for me, is how is there reliance, right? I mean, so the promise you're saying is made before he takes steps to leave his former employer and join Radish Media, right? There were promises, well, there's Actually, there's six. I think there's six promises in the legislature. Okay. But I mean, there has to be some detrimental reliance, right? Some injury is a result of the reliance. And so, but it seems like this, what you're describing now is that this promise did not become non-conditional until long after he'd already made the move. So at the time he made the move, it was a purely conditional promise. No, Your Honor, I'm sorry. So at the time he made the move, there was a promise as the board had already decided, there was already a plan set up, and the number of shares was decided? Well, we know that the number of shares are decided because we're looking at Mr. Lee, who's the CEO and major shareholder. Yeah, but that's in 2000, it's June of 2016. He'd already moved. No, that email and that letter went just before he left. There were subsequent communications after he left where the same numbers were used. I guess, but the point of the promise is that he's been injured because he left his former employer. He's not injured because he's leaving the company in 2016. I guess that's what I'm trying to understand. What's your injury here? There's injuries along the way, but the key injury here is as he's leaving, Mr. Lee says to him, they're friends at this point, do me a favor, don't sign the agreement. We're making some adjustments, do me a favor, don't sign it. So he doesn't sign it. He trusts his friend, he walks away from the company, and then he goes back a couple of times in 2016. 2018, again, he says, hey, Mr. Lee, where's my equity interest? He says, don't worry about it, it's yours, don't make the claim right now. We are working through some other issues with investors. So that's the final promise. That strikes me as a very devious and bad behavior, if that's true, by Mr. Lee. But I'm not sure, now it seems more like the offer that was made in that letter has effectively been withdrawn, right? Because that letter was, here's your deal, we're offering this to you, sign it if you want it. And then you're saying his detrimental reliance was on the statement by Mr. Lee that something else was going to happen in the future that's different than what is in this letter. Is that the idea? Not exactly, Your Honor. Why isn't it, then? Why isn't that an accurate statement, that he declined the offer that was made by failing to accept it and sign it in reliance on a promise that a new plan was going to be made in the future? Really, the way that we look at it is, basically, do me a favor, Jordan, don't sign this right now. The numbers stayed the same, there were no changes in the numbers. There's an allegation in the complaint. What is the favor? I'm just having trouble understanding what's going on. I thought the idea was, we're having a new plan coming, so don't sign this because the new plan will be there instead. That's what the, that's part of the allegation. But the numbers did stay the same. Okay, well, can I ask a different question? Because we are entitled to affirm on any ground that appears in the record. It's my understanding that New York law, under New York law, promissory estoppel only applies in a statute of fraud situation if there is unconscionable injury. And the unconscionable injury has to mean something more than just you didn't get what you were promised. Yes. Is that correct? That is correct. That's correct. That's, yes, that's correct. Okay. So what is the unconscionable injury here? First, unconscionable injury is a question of fact. It can't be decided at this point. Wait, wait, wait, wait, wait. I don't mean to hold you to an answer to what may have been a compound question, but what I was asking was, part of the thing is, isn't New York law that an unconscionable injury must mean something other than you didn't get what you were promised? Yes, I have to agree with you on that. Okay, so what is the something else? But, I mean, the something else could be anything, you know, that you want to say it is, and then make the argument that it's a factual matter whether that thing is unconscionable injury. I'm just asking, what is it? But let me go back to the law. The law is it's a statute of frauds. If you're using promissory estoppel to avoid the statute of frauds. Well, you are, aren't you? Because this Court has already affirmed. I haven't looked into, because I don't need to, because I'm bound by it, whether I agree with that affirming the dismissal of the contract claim on the basis of statute of frauds. And then the only thing that then survives and is now refreshed in a new complaint is promissory estoppel. So you're saying that this is not a case where the promissory estoppel, I mean, there's no question, usually, I mean, the way I learned this 80 years ago in law school was promissory estoppel is usually a substitute for consideration. But here, I don't think there's any issue of consideration because the, he went to work, he conferred a benefit in exchange, apparently, for this promise. So the thing that was a block to the contract claim was statute of frauds, right? Yes, but with a promissory estoppel, what you have to look at, again, like I said, we've alleged five or six times that these promises were made. Well, you have to pick one or at least five or at least tell us. I'm going to pick the one because there are problems with some of those six promises. For sure, some of them were conditional, right? And others may have taken place after he already left the company, which raises questions of whether there could be reliance and what the reliance could be. So what's your best one? My best one? Something, a promise that was made unconditionally before he left and he relied by not leaving and giving something else up. No, as he was leaving. So statute of frauds applied because of the way these options were granted. It had to be done. You had to be there a year before you got the options, right? So that's where the statute of frauds come in. So these promises, especially the last one, the last two, I would say, were made after the options, after they had vested. So that one year had taken place. So once that year is over, we don't have to worry about the statute of frauds anymore. Now you have to look at what the district court looked at. Was that promise conditional? Was it reasonable reliance? So once — when he leaves, we know, and just as he was leaving, we know that he had 137 shares that were vested. So there's no statute of frauds issue there because that's behind us. Now we have to look at, all right, so Mr. Lee says, hey, do me a favor, don't sign the agreement, let me sort a couple things out, and then — I'm doing — do me a favor. So he does the favor, and there's a promise made in exchange that you will have the shares. I think, again, now we're looking at consideration, right? Consideration is the favor. Don't sign this letter. No, but what did my guy get out of that? What did Mr. Lim get out of that? There's no consideration going both ways. What he did was do him a favor. So he's relying on that promise and not acting, not saying, let me have that Morgan Lewis letter, I'm going to sign it right now. He says, all right, all right, you want me to wait, I'll wait. And it cost him — maybe it cost him $2.2 million. So that's — that's — that's the argument. But what was the reason for the wait, as far as your client is concerned? I'm trying to understand that. Something had to change. That would seem to make this conditional. Don't sign this one because something else is going to happen. Well, the reason for the — for the favor, the reason my client did a favor is because he understood the company was going through some turmoil. Mr. Lee's job is to gather his investors, make everybody happy, and move this company forward. Mr. Lim was invested in that. He wanted his company to succeed. And he did — he did his friend a favor and did not sign the agreement that may have caused additional chaos at the time. And we have not had discovery, so I haven't had a chance to explore this. Well, you're reserved for minutes for rebuttal. Mr. Nelson. Thank you, Your Honor, and may it please the Court. My name is James Nelson, and I represent Radish Media and Mr. Lee in this case. Plaintiff Lim chose not to appeal the dismissal of his contract claim under the statute of frauds from his first amended complaint. That dismissal has consequences for the promissory estoppel claim at issue here. Neither New York nor California law permits a plaintiff to end run around the statute of frauds. Wait a minute. Why do you have to bring California into this? Because below they argue that California law applied. But it was not argued in the — you know, I think it's clear that this case was presented to us as being about New York law. And when I asked your friend on the other side about the — about what New York law was, he didn't say, oh, don't worry about New York law. It's really about California law. So let's just stick with what we're doing. Yes, Your Honor. Sticking with New York law, as this Court observed in its last opinion in this case, plaintiff may not escape the statute of frauds by labeling his contract claim unjust enrichment. The same is true for promissory estoppel in the context of this case, including because, as Your Honor noted, plaintiff has alleged no unconscionable injury here. Now, I heard him say that that is a question — I understood your adversary to be arguing — I may not have this right — that the statute of frauds was satisfied because the condition that Mr. Lim work for a year had been satisfied. So two responses to that, Your Honor. First, in the first amended complaint, they alleged the same thing, and the district court dismissed based on the statute of frauds, and they have not appealed that holding. So that is a final holding in this case, that his entire contract claim is dismissed under the statute of frauds. The contract claim. Exactly, Your Honor. And that's not appealed before, Your Honors. That's a final holding in this case. So his entire contract claim for equity, he attached this letter from the end of his employment, he attached that to his first amended complaint, and the district court judge dismissed that as a basis for contract under the statute of frauds. So the statute of frauds clearly applies to this case. Now, he's also arguing because the promise was repeated after his year of work to earn the equity, somehow that gets rid of the statute of frauds, even setting aside the final judgment of the district court that he hasn't appealed. That doesn't change the fact that the promise could not be fulfilled, the condition of the promise could not be fulfilled within one year. And that's the question for statute of frauds. Because he hadn't worked one year before the disputed consideration. And it says as much in the letter that's attached to the complaint, you had to work at least a year for these shares to be vested. So it still took a year for the condition to be satisfied. So the statute of frauds clearly applies to this case. And he hasn't alleged in the complaint anywhere, despite multiple opportunities, any unconscionable injury. And in the briefing and in response to Your Honor's question, he did not identify even a single allegation that he claims is an unconscionable injury. So under New York law, that bars his promissory estoppel claim. New York law also bars his promissory estoppel claim because we cited multiple New York appellate division cases holding that promissory estoppel is not a valid claim in the employment context, where you're arguing that your employer promised you a bonus or pay or benefits and that you relied on that promise. A promissory estoppel claim is not available. Only contract claims or unjust enrichment claims. But as Your Honors know, those claims have already been dismissed with prejudice in this case, and he's not appealing those dismissals. One final point just on the conditional promise. Your Honor is correct, Judge Sullivan, that even in this last promise that he alleges right before he left in April of 2016, first of all, he says that he had already decided to leave when that e-mail came. So the detrimental reliance is not staying at the company or leaving for the company. He had already decided to leave Radish Media. So today, he's arguing that the detrimental reliance was not signing the letter. But in his complaint, he alleges that Mr. Lee asked him not to sign the letter because they were going to implement a plan in the future. And then he alleges two paragraphs later, I believe this is paragraph 33, that that plan was implemented in 2017. But he left the company in June 2016, and he never even alleges that that plan covered former employees or applied to him. And that's not even to mention board approval for his claim or the purchase of a stock option agreement with the company. And so because none of those conditions were satisfied until well after he left, if at all, this promissory estoppel claim fails. If Your Honors have no other questions, I'm happy to cede the rest of my time. Thank you very much. Mr. Olson, you have two minutes for rebuttal. The issue of New York law, whether New York law allows promissory estoppel in employment context, it's not a black and white issue. It's dealt with in the briefs. There's plenty of authority that says that's not the law in New York. And the second point I'd like to... You're not questioning New York law as the only law we need to care about at this point? You're not arguing California law? No, we're not arguing California law. Okay. And, you know, we don't know what the board approved at this point. And we haven't, they're hiding, kind of, the defendants are kind of hiding behind that. All we know is we have the guy, Mr. Lee, who is telling his friend, you got the equity. Just, you know, give me a second. Don't sign the letter right now. And that's all I have, unless there's questions from the bench. No. All right. Thank you very much. Thank you. We will reserve the decision.